1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EDWARD A. YOUNG,

11              Petitioner,              No. 2:08-cv-2832 KJN P

12        vs.

13   JOHN W. HAVILAND, Warden,

14              Respondent.              ORDER

15   _____/

16   I.  Introduction

17              Petitioner is a state prisoner proceeding without counsel with an application for a

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Both parties have consented to proceed

19   before the undersigned for all purposes.  See 28 U.S.C. § 636(c).  (Dkt. Nos. 4, 15.)  Petitioner

20   challenges his 2006 conviction for second degree robbery.  Petitioner was sentenced to 25 years

21   to life in state prison.  Petitioner raises three claims of alleged ineffective assistance of counsel in

22   violation of the Sixth Amendment, and one claim of cumulative error.  After careful review of

23   the record, this court concludes the petition should be denied.

24   II.  Procedural History

25              On June 7, 2006, a jury found petitioner guilty of second degree robbery.  (1

26   Clerk's Transcript ("CT") at 241-42.)  After petitioner waived his right to a jury trial on his prior

1

convictions, the trial court found, in a bifurcated court trial, the allegations of petitioner's prior convictions to be true.  (1 CT at 244-45.)  Petitioner's prior convictions were a 1991 conviction for first degree burglary, a 1985 conviction for assault with a firearm, and a 1983 conviction for robbery, all within California's Three Strikes Law, and all serious felonies.  (Id.; see also 1 CT at 39-40.)

On November 7, 2006, the trial court granted the prosecution's motion to strike the California Penal Code § 667(a) prior convictions.  (2 CT at 309, 312.)  Petitioner was then sentenced to a term of 25 years to life in state prison.  (2 CT at 309, 313-14, 317.)

Petitioner filed a timely appeal on November 9, 2006.  (2 CT at 319.)  On November 13, 2007, the California Court of Appeal, Third Appellate District, affirmed the judgment, with the exception of the imposition of a surcharge and a correction of custody credits. (Respondent's Lodged Document ("LD") 3); see also People v. Young, 156 Cal.App.4th 1165 (2007) (judgment modified to provide for a 10 percent ($500) administrative surcharge, and to amend the abstract of judgment to reflect 326 actual days of custody credit).  On November 27, 2007, the California Court of Appeal issued a modified opinion making minor changes to the opinion.  (LD 4.)

On December 13, 2007, petitioner filed a petition for review in the California Supreme Court.  (LD 5.)  On February 20, 2008, the California Supreme Court denied the petition for review.  (LD 5.)

It appears petitioner filed no petitions for writ of habeas corpus in any California state court.

On November 24, 2008, petitioner filed the instant petition.

////
////
////
////

III.  <u>Facts</u>[1]

On May 12, 2005, at approximately 2:00 a.m., Christina Lopez and Maria Valdez were working as cashiers at the USA gas station in Lodi.  Two men entered the store, [petitioner] and his friend, Eli Hayes (whom he later identified as his codefendant).  Hayes approached Lopez at the cash register, pulled a gun and threatened to shoot her if she did not give him money.  Lopez gave him money from her register.  [Petitioner] went to Valdez, pulled a gun,[fn] and demanded she give him money.  When Valdez could not open her register, [petitioner] raised his arm as though he was going to hit her.  While Valdez was trying to open her cash register, she was also activating the alarm.  Valdez realized [petitioner's] weapon was not real, because she could see the "point was crushed."  Nonetheless, she was frightened and scared.  After getting money from Lopez, Hayes and [petitioner] left the store and went their separate ways.

[fn] Petitioner actually used a plastic or "simulated" BB gun.

Responding to a dispatch, Lodi Police Officer Kevin Kent arrived at the USA gas station shortly after the robbery.  He took statements from Lopez and Valdez, got general descriptions of the perpetrators and watched a video surveillance tape.  He also later received still-frame photographs produced from another surveillance tape. [fn]  Officer Kent did not see either Hayes or [petitioner] with a gun on the tape.

[fn]  Apparently, there were two surveillance tapes, one taken by the in-store system and a second by an independent system.  The still-frame photographs were taken from the independent surveillance system video.

Officer Dale Eubanks, who had known [petitioner] and his family for a number of years, saw the still-frame photographs and recognized one of the robbers as [petitioner].  About a week after the robbery, Eubanks was riding with Detective Nick Rafic when he saw [petitioner] in front of a local market.  [Petitioner] was wearing clothes that were either the same or very similar to those depicted in the photographs from the robbery.  Eubanks and Rafic pursued [petitioner], but he fled the scene and they were unable to find him.

Detective Rafic was assigned to follow up on the investigation of the case.  As part of that investigative process, he procured a prior booking photo of [petitioner]. [fn]  Using that photograph, he

[1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in <u>People v. Young</u>, No. C054130 (November 13, 2007), a copy of which was lodged by respondent on September 15, 2009, as Lodged Document 3.

3

prepared a photo line-up.  He showed the photo line-up to both Lopez and Valdez.  Each identified [petitioner] as one of the robbers.  However, Lopez expressed some uncertainty.

> [fn]  Regarding the prior booking photo, Detective Rafic offered the unsolicited clarification that "anybody who gets booked in the state, their photo becomes available to a police officer--for viewing for prior booking arrests."

Detective Rafic then learned [petitioner] was at Calaveras County Jail, so he went there to speak with [petitioner].  He told [petitioner] he was there investigating the robbery.  [Petitioner] indicated he was aware of the robbery and, after being "Mirandized," gave Rafic a statement.

[Petitioner] stated he and Hayes had decided to rob the gas station.  He made it clear to Hayes he did not want anyone to get hurt.  He used a plastic or simulated BB gun, and Hayes had a knife.  When Hayes got the money, they left the store and met up later at an abandoned house.  In counting the proceeds, they had about $200.  Hayes kept the money and would not share it with [petitioner].  But, Hayes used the money to buy food and drugs, which he shared with [petitioner].  [Petitioner] indicated he was sorry for his actions and particularly sorry he had frightened Lopez and Valdez.  Despite his remorse, [petitioner] was not concerned about discussing the robbery, because he knew "he [could] plead insanity," and specifically used the phrase "5150." [fn]  Detective Rafic explained this reference as "they use numbers based on some of these--you know, the mentally unstable."  Rafic's interview with [petitioner] was not recorded in any way. Rafic acknowledged he was familiar with [petitioner] and knew him to be a drug user.

> [fn]  Presumably, this was a reference to Welfare and Institutions Code section 5150, which allows for a 72-hour involuntary commitment for those determined to be dangerous to themselves or others.

After the presentation of evidence, the jury was instructed.  The instructions included the lesser included offenses of attempted robbery, petty theft and attempted petty theft.  The instructions also included liability under an aiding and abetting theory. [fn]

> [fn]  Defense counsel's objection to the instructions on liability premised on an aiding and abetting theory was overruled.

Jury deliberations commenced on June 2, 2006.  The next court day, the jury asked to see the surveillance tape and asked for a readback of Lopez's testimony.  The next day, the jury sent a note stating it was deadlocked and had been since the previous morning. The foreperson indicated it was unclear whether "there's 100

percent understanding from everyone in the box how--from the lesser--how the lesser charges work with the robbery."

The court directed the jury back to the instructions and the foreperson indicated the instructions had been read "over and over and over" and were not especially helpful. The foreperson advised the court the problem appeared to be a disagreement on "the perception of the facts" and did not believe any additional time would be helpful in reaching a verdict. The rest of the jury agreed that neither further time nor instruction would be helpful. The court asked about the split on the last vote, and was advised it was "three numbers," "ten-to one-to one," indicating their level of disagreement. The court asked if further argument from the attorneys might be helpful. Although some of the jurors did not think it would be, others did. Accordingly, the court reopened closing argument for both parties. Neither party objected.

The prosecutor focused his second closing argument on liability under either a conspiracy theory or an aiding and abetting theory, theories which had been originally instructed upon but which he had not argued in his original closing argument. Defense counsel continued to focus his argument on the lesser included offenses.

The jury resumed deliberations. A short time later, it asked for a readback of defense counsel's second closing argument. Neither party objected. The court readvised the jury that statements and arguments of the attorneys are not evidence and defense counsel's argument was reread to the jury. The jury continued deliberations for over an hour, broke for lunch, reconvened, and then deliberated for another hour, at which time they had reached a verdict of guilty as to count 1 (§ 211).

People v. Young, 156 Cal.App.4th 1165, 1168-70 (Cal.App.3 Dist., 2007).

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

////

1    (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as
2    determined by the Supreme Court of the United States; or

3    (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
4    State court proceeding.

5    28 U.S.C. § 2254(d).

6           Under section 2254(d)(1), a state court decision is "contrary to" clearly

7    established United States Supreme Court precedents if it applies a rule that contradicts the

8    governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

9    indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

10   result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06

11   (2000)).

12          Under the  "unreasonable application" clause of section 2254(d)(1), a federal

13   habeas court may grant the writ if the state court identifies the correct governing legal principle

14   from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

15   prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

16   simply because that court concludes in its independent judgment that the relevant state-court

17   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

18   application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

19   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

20   question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

21   omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief

22   so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

23   Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

24          The court looks to the last reasoned state court decision as the basis for the state

25   court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

26   decision, "and the state court has denied relief, it may be presumed that the state court

6

1   adjudicated the claim on the merits in the absence of any indication or state-law procedural

2   principles to the contrary." Harrington, 131 S. Ct. at 784-85.  That presumption may be

3   overcome by a showing that "there is reason to think some other explanation for the state court's

4   decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

5          Where the state court reaches a decision on the merits but provides no reasoning

6   to support its conclusion, the federal court conducts an independent review of the record.

7   "Independent review of the record is not de novo review of the constitutional issue, but rather,

8   the only method by which we can determine whether a silent state court decision is objectively

9   unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

10  decision is available, the habeas petitioner has the burden of "showing there was no reasonable

11  basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.  "[A] habeas court must

12  determine what arguments or theories supported or, . . . could have supported, the state court's

13  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

14  arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at

15  786.

16  V.  Petitioner's Claims

17          A.  Alleged Ineffective Assistance of Counsel

18          Petitioner raises three grounds that trial counsel rendered alleged ineffective

19  assistance of counsel in violation of petitioner's Sixth Amendment rights.  The court will first set

20  forth the standards for reviewing ineffective assistance of counsel claims, and will then address

21  each ground seriatim.

22          The Sixth Amendment guarantees the effective assistance of counsel.  The United

23  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

24  Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

25  counsel, a petitioner must first show that, considering all the circumstances, counsel's

26  performance fell below an objective standard of reasonableness. Id. at 687-88.  After a petitioner

identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the wide range of professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citation omitted). Additionally, there is a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citation omitted).

Recently, the Ninth Circuit clarified how courts must analyze ineffective assistance claims under AEDPA.

> Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788.

### i. First Ground of Alleged Ineffective Assistance of Counsel

In his first ground, petitioner alleges trial counsel was ineffective based on trial counsel's failure to object to the re-opening of closing arguments during jury deliberations. (Dkt. No. 9 at 4.)

1    The last reasoned rejection of this claim is the decision of the California Court of

2    Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

3    this claim first by analyzing whether the trial court was authorized to reopen closing argument,

4    then by analyzing petitioner's ineffective assistance of counsel claim, as follows:

5            [Petitioner] contends the trial court was without authority to
             reopen closing argument while the jury was deliberating.  He
6            contends doing so resulted in a miscarriage of justice, violated his
             due process rights, and constituted improper jury coercion.  We are
7            not persuaded.

8            Initially, we note that despite being specifically asked if there
             was any objection, [petitioner] did not object to having the case
9            reopened to present additional closing argument to the jury.  That
             failure to object forfeited the issue for appeal.  (See People v.
10           Jennings (1991) 53 Cal.3d 334, 383-384, 279 Cal.Rptr. 780, 807
             P.2d 1009; People v. Bishop (1996) 44 Cal.App.4th 220, 235, 51
11           Cal.Rptr.2d 629.)  Perhaps anticipating this outcome, [petitioner]
             argues alternatively that counsel's failure to object was ineffective
12           assistance of counsel.  Because we find [petitioner's] claim has no
             merit, counsel's failure to object did not render his representation
13           ineffective.

14           [Petitioner] specifically argues, "[t]here appears to be no statute
             that would authorize the court's action in allowing the prosecution
15           to reargue the case as a means of overcoming jury deadlock."
             [Petitioner] is mistaken.

16
             There is authority guiding the trial court's actions with respect to
17           the order of a jury trial and its obligations upon being faced with a
             deadlocked jury.  [California Penal Code] Section 1093 delineates
18           the order that trial procedures shall follow, including the direction
             that the prosecutor and defense counsel may argue the case to the
19           court and jury upon the close of evidence. (§ 1093, subd. (e).)
             [California Penal Code] Section 1094 grants the trial court broad
20           discretion to depart from the order specified in section 1093.
             [California Penal Code] Section 1140 entitles the trial court to
21           ascertain whether there is a reasonable probability a jury deadlock
             might be broken.  (Cf. People v. Miller (1990) 50 Cal.3d 954,
22           993-994, 269 Cal.Rptr. 492, 790 P.2d 1289; People v. Sheldon
             (1989) 48 Cal.3d 935, 959, 258 Cal.Rptr. 242, 771 P.2d 1330.)
23           When the court is faced with a deadlocked jury, it must proceed
             carefully, lest its actions be viewed as coercive.  (See People v.
24           Rodriguez (1986) 42 Cal.3d 730, 775, 230 Cal.Rptr. 667, 726 P.2d
             113.)  At the same time, when faced with questions from the jury,
25           including that they have reached an impasse, "a court must do
             more than figuratively throw up its hands and tell the jury it cannot
26           help.  It must at least consider how it can best aid the jury."

(People v. Beardslee (1991) 53 Cal.3d 68, 97, 279 Cal.Rptr. 276, 806 P.2d 1311.)

> [fn]  Relying on the authority conferred on the court by sections 1093 and 1094, the Judicial Council recently clarified the existing authority of the court and enacted California Rules of Court, rule 2.1036.  This rule expressly states that after a jury reports it has reached an impasse in deliberations, if the trial judge determines further action may assist the jury in reaching a verdict, the trial judge may "permit attorneys to make additional closing arguments."  (Rule 2.1036(b)(3).)  This rule became effective January 1, 2007.  (Judicial Council of Cal., Admin. Off. of Cts., Rep. on Jury Rule Proposals [to adopt Cal. Rules of Court, rules 2.1032, 2.1033, 2.1034, 2.1035 & 2.1036] (Nov. 28, 2006), pp. 10, 17.)

Here, there were no remarks by the court that could have been viewed as coercive. It did not urge the jurors to reach agreement. There were no coercive instructions given.  Nor did any remarks from the court show a preference for a particular verdict.  By asking if additional argument might be helpful, the court did no more than ascertain the reasonable probability of the deadlock being broken and a means by which that might be accomplished. When some of the jurors agreed additional argument might help them in reaching a verdict, it was not inappropriate for the court to seek to offer that alternative to aid the jury.  Further, the procedure was neutral, giving each side a brief opportunity to argue.  We see no impropriety in the court's exercise of its discretion.

The determination that the court acted within its inherent authority and did not abuse its discretion necessarily resolves [petitioner's] claim that his trial counsel was ineffective for failing to object to further closing argument.

To establish ineffective assistance of counsel, a defendant must show "not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice." [Citation.]  Prejudice occurs only if the record demonstrates 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (People v. Lucero (2000) 23 Cal.4th 692, 728, 97 Cal.Rptr.2d 871, 3 P.3d 248.)

Here, [petitioner] has not demonstrated deficient performance by counsel.  The procedure implemented by the court was well within its authority.  It was not an "unprofessional error" for counsel not to object to an authorized procedure, nor did this lack of objection affect the outcome of these proceedings.

People v. Young, 156 Cal.App.4th at 1170-72.

1   Petitioner argues that the outcome of the trial would have been different if the trial

2   court had not permitted additional closing arguments because the jury allegedly would have

3   remained deadlocked.  However, the appellate court found that the trial court was within its

4   discretion to reopen closing arguments.  "A court must apply a 'totality of the circumstances' test

5   when considering whether a verdict was coerced by actions of the trial court."  Fry v. Pliler, 2004

6   WL 5264357 (E.D. Cal. 2004), citing Early, 537 U.S. at 8.

7   While it is not a common practice for trial judges to reopen closing arguments

8   during jury deliberations, the practice is not unlike judges commenting on the evidence or

9   offering further jury instructions in an effort to help the jury reach a verdict.  This is not a case

10  where the trial judge inordinately pressured jurors to reach a verdict following a deadlock after

11  the jury had made exhaustive efforts to reach a verdict.  See Arizona v. Washington, 434 U.S.

12  497, 509 (1978) (if a trial judge fails "to discharge a jury unable to reach a verdict after

13  protracted and exhausting deliberations, there exists a significant risk that a verdict may result

14  from pressures inherent in the situation rather than the considered judgment of all the jurors.")

15  Here, the state court appropriately reviewed the totality of the circumstances and

16  determined no coercion took place.  The record demonstrates that the trial judge was attempting

17  to help the jury reach a verdict, and, as noted by the appellate court, used no coercive tactics to

18  influence the jury's decision.  (Reporter's Transcript ("RT") at 304-08.)  The trial court provided

19  both the prosecution and the defense an opportunity to further argue each one's position, thus

20  ensuring a neutral solution.  The record confirms the trial judge expressed no preference for a

21  particular verdict, nor did he encourage the jury to reach a verdict.  (Id.)  The supplemental

22  closing arguments were very short.[2]  Finally, the length of time between the announcement the

23

24      [2]  The jury began deliberating sometime in the afternoon of Friday, June 2, 2006.  (CT
    143.)  Jury trial reconvened on Tuesday, June 6, 2006.  (CT 143.)  The jury announced they were
25  deadlocked at 9:30 a.m. on Wednesday, June 7, 2006.  (CT at 231.)  The supplemental closing
    arguments were given to the jury sometime after 10:03 a.m. on June 7, 2006.  (CT at 243.)  The
26  jury requested to rehear defense counsel's supplemental closing at 10:50 a.m. on June 7, 2006.

1   jury was deadlocked, and the time the jury reached a verdict, was also short.  (CT 231, 244.)

2   Because the trial court was within its discretion to allow supplemental closing

3   arguments, and the trial court did so in a neutral fashion, this court cannot find that defense

4   counsel was ineffective for failing to object to supplemental closing arguments during jury

5   deliberations.  Moreover, the state court properly applied Strickland standards.  Id., 466 U.S. at

6   688.  Petitioner has failed to demonstrate that the state court's application of Strickland was

7   unreasonable.  Harrington, 131 S. Ct. at 788.  The court also cannot find that the outcome of

8   these proceedings would have been different had defense counsel raised an objection.  It is not

9   clear on this record that the trial judge would have sustained such an objection.  Moreover, even

10  if the trial judge had opted not to allow supplemental closing arguments, it is not clear the trial

11  judge would not have provided further assistance to the jury, either in the form of a clarification

12  on the lesser-included offense jury instruction, or a comment on the evidence.  Petitioner has

13  failed to demonstrate that the appellate court was unreasonable in finding trial counsel was not

14  ineffective for failing to object to the supplemental closing arguments.  Accordingly, the state

15  court's rejection of petitioner's first claim for relief was neither contrary to, nor an unreasonable

16  application of, controlling principles of United States Supreme Court precedent.  Petitioner's first

17  claim for relief should be denied.

18               ii.  Second Claim of Alleged Ineffective Assistance of Counsel

19               In his second claim, petitioner contends the trial court abused its discretion by

20  allowing the jury to hear a re-reading of trial counsel's supplemental closing argument and that,

21  alternatively, trial counsel was ineffective based on trial counsel's failure to object to the re-

22  reading of trial counsel's supplemental closing argument to the jury during jury deliberations.

23               The last reasoned rejection of this claim is the decision of the California Court of

24  Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

25  _____

26  The jury's verdict was announced at 2:10 p.m. on June 7, 2006.  (CT at 244.)

this claim as follows:

> During discussions with the court about the jury's request to have his second closing argument read back, defense counsel noted that argument is not evidence.  The trial judge clarified that the decision was within her discretion and went on to indicate, "Based on the fact that they previously told me they were hung.  I think that maybe I would allow them to rehear it."  Counsel asked which argument the jury was requesting and the court answered, the second one.  Counsel responded, "It was a piece of garbage."  Counsel went on to state, "I don't know.  I always thought it was error.  I'm not arguing with you.  That was always my impression, that it wasn't evidence and it couldn't be given."  The trial judge corrected counsel and clarified that although argument is not evidence, it is "up to the Court whether or not I give it.  [¶]  Now, normally, I wouldn't give it again, but on a case where I know they're already hung, if you don't object, I am willing to give it to them if they think it's going to be helpful."  Defense counsel stated he would not object, "[i]f they think it's helpful."  The trial judge replied, "I know they think it's helpful because they asked for it."  Prior to the readback of argument, the court reminded the jury that "statements and arguments made by counsel are not evidence."

> As above, despite being specifically asked, counsel did not object to the procedure proposed by the court.  The failure to object forfeits the issue on appal.  (People v. Saunders (1993) 5 Cal.4th 580, 589-590.)  Anticipating this conclusion, [petitioner] argues in the alternative that counsel was ineffective for failing to object.  Again, we are not persuaded.

> There is no doubt that a trial court has inherent authority to "order argument by counsel to be reread to the jury or to be furnished to that body in written form.  The exercise of such power must be entrusted to the court's sound discretion.  As a result, review must be conducted under the deferential abuse-of-discretion standard."  (People v. Gordon (1990) 50 Cal.3d 1223, 1260, disapproved on other grounds in People v. Edwards (1991) 54 Cal.3d 787, 835; People v. Gurule (2002) 28 Cal.4th 557, 649 (no abuse of discretion where trial court declined request for readback of closing argument, particularly when defense counsel's closing arguably misstated the law); People v. Sims (1993) 5 Cal.4th 405, 452-453; People v. Pride (1992) 3 Cal.4th 195, 266-267.)

> [Petitioner] concedes a readback of argument is within the court's discretion, but argues that since the "jury never should have heard reargument . . . it was a gross abuse of discretion to allow the jury to hear it again."  That is, his argument that the court abused its discretion in allowing the readback is premised on the supposition  that the initial determination to reopen the case for further argument was error.  As above, the initial determination regarding further argument was not in error; it was a decision well

within the court's discretion.

Without the foundational predicate for [petitioner's] claim, the court's decision to permit the readback of closing argument was similarly well within its discretion.  Prior to the readback, the court took the precaution of reminding the jury that argument was not evidence.  The argument was brief and the court believed rereading it would be helpful to the jury.  Under these circumstances, the court's ruling was not an abuse of discretion.

As above, to prevail on a claim of ineffective assistance of counsel, the defendant must show prejudice.  To establish prejudice, the accused must show a reasonable probability, sufficient to undermine confidence in the outcome, that, but for the allegedly deficient performance, the result of the proceeding would have been different.  (Strickland v. Washington (1984) 466 U.S. 668, 693-694 [80 L.Ed.2d 674, 697-698]; People v. Ledesma (1987) 43 Cal.3d 171, 217-218 (Ledesma I).)  In demonstrating prejudice, the defendant "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel."  (People v. Williams (1988) 44 Cal.3d 883, 937.)

 "Failure to object rarely constitutes constitutionally ineffective legal representation . . . .' [Citation.]  Moreover, '[i]f the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal."  (People v. Higgins (2006) 38 Cal.4th 175, 206.)

This is not a case where there could be no satisfactory tactical reason for counsel's failing to object to the readback of his second closing argument.  The readback of defense counsel's closing argument meant that his version of the case, that [petitioner] was not guilty of robbery but a lesser included offense, was put before the jury on three separate occasions.  Tactically, counsel could have determined this readback represented a unique opportunity for defense counsel to have his vision of the case be the last word presented to the jury. [fn]  We cannot fault this reasoning, nor can we find on this record that counsel's performance was deficient because he did not object to a rereading of his argument already heard by the jury.

> [fn] [Petitioner's] real complaint seems to be with the quality of this second closing argument and defense counsel's statement that his second argument was "garbage."  However, the fact that a better or different argument could have been made does not render counsel's performance deficient.  (People v. Ledesma (2006) 39 Cal.4th 641, 748 (Ledesma II).

14

1    (LD 3 at 10-14.)

2          Petitioner's claim that the trial court abused its discretion is not cognizable on

3    habeas review because this court is limited to deciding whether a state court decision violates the

4    Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a); Estelle v. McGuire, 502

5    U.S. 62, 67-68 (1991); see also Williams v. Borg, 139 F.3d 737, 740 (9th Cir.) (1998) (federal

6    habeas relief is available "only for constitutional violation, not for abuse of discretion."), cert.

7    denied, 525 U.S. 937 (1998).

8          Petitioner's ineffective assistance of counsel claim fails because the state appellate

9    court properly applied Strickland standards.  The trial court had authority to order read-back of

10   closing argument to the jury; therefore, trial counsel cannot be ineffective for failing to object to

11   the read back of the supplemental closing argument.  Moreover, as argued by respondent, the

12   appellate court's denial was reasonable in that the jury's request to have the supplemental closing

13   argument read back raised an inference that the read back would be helpful to the jury.  In

14   addition, the jury was properly admonished, prior to the read back, that trial counsel's argument

15   was not evidence.  (RT at 319.)  Although petitioner contends the jury returned "immediately"

16   after the re-reading of defense counsel's supplemental closing argument (dkt. no. 9 at 22), the

17   record reflects that it was about three hours later.  (CT at 243-44; see also footnote 8 infra.)

18   Finally, as noted by the state court, defense counsel may have decided, for tactical reasons, not to

19   object based on a belief that it reiterated the defense's version of the case for the jury.

20   Accordingly, the state court's rejection of petitioner's second claim for relief was neither contrary

21   to, nor an unreasonable application of, controlling principles of United States Supreme Court

22   precedent.  Therefore, petitioner's second claim for relief should be denied.

23                iii.  Third Claim of Alleged Ineffective Assistance of Counsel

24          For ground three on the form petition, petitioner claims trial counsel was

25   ineffective because trial counsel permitted testimony, without objection, relating to petitioner

26   being booked for prior crimes.  (Dkt. No. 9 at 5.)  In the attachment, petitioner claims trial

1   counsel was ineffective based on (a) trial counsel eliciting testimony that Detective Rafic took

2   petitioner's statement while petitioner was incarcerated in Calaveras County Jail; that as a police

3   officer, Rafic had been familiar for a long time with petitioner; and that petitioner was known as

4   a drug user; (b) trial counsel initiated a bizarre, on-the-record argument with petitioner, against

5   petitioner's penal interests, during the court trial on the prior conviction allegations; and (c)

6   during closing argument, trial counsel revealed that petitioner had a prior theft conviction.  (Dkt.

7   No. 9 at 24.)

8           The last reasoned rejection of this ground is the decision of the California Court of

9   Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

10  these subclaims as follows:

11          [Petitioner] next puts forth a series of acts and omissions by trial
            counsel that, he contends, when taken together, rendered counsel's
12          representation ineffective.  Again, we are not persuaded.

13          [Petitioner] raises four specific instances of claimed error by
            counsel.  First, on direct examination, Detective Rafic testified that
14          he obtained [petitioner's] prior booking photo to prepare a photo
            line-up.  Rafic also explained to the jury what a prior booking
15          photo is.  Defense counsel did not object to this reference to, or
            description of, prior booking photos.  Second, on cross-
16          examination of Rafic, defense counsel elicited testimony that
            [petitioner] had been initially contacted by Rafic when he was in
17          the Calaveras County Jail.  Third, defense counsel elicited
            testimony from Rafic that he was familiar with [petitioner] as a
18          drug user.  Lastly, at the very end of closing argument, defense
            counsel "apparently slipped" and requested that if the jury were to
19          find [petitioner] guilty of anything, it should find him guilty of
            "petty theft with *a prior*" (italics added).  [Petitioner's] prior
20          convictions had been bifurcated and were not before this jury.

21          "'Whether to object to inadmissible evidence is a tactical
            decision; because trial counsel's tactical decisions are accorded
22          substantial deference [citations], failure to object seldom
            establishes counsel's incompetence.' [Citation.]  'In order to
23          prevail on [an ineffective assistance of counsel] claim on direct
            appeal, the record must affirmatively disclose the lack of a rational
24          tactical purpose for the challenged act or omission.'"  (People v.
            Williams (1997) 16 Cal.4th 153, 215.)  It does not do so in this
25          case.

26          We do not agree that counsel's decision to not object to

                                        16

Detective Rafic's unsolicited mention of prior booking photos
constituted ineffective assistance of counsel.  Trial counsel may
have decided not to object to Rafic's testimony about [petitioner's]
prior booking photos because an objection would have highlighted
the testimony and made it seem more significant than it was.  (See
People v. Padilla (1995) 11 Cal.4th 891, 958, overruled on other
grounds in People v. Hill (1998) 17 Cal.4th 800, 823, fn. 1.)  This
is a legitimate tactical reason to decide not to object to testimony.

There were also possible legitimate tactical reasons for defense
counsel's elicitation of the testimony that [petitioner] was in jail
when Detective Rafic interviewed him.  The record reveals defense
counsel sought to challenge the accuracy of [petitioner's] statement
to Detective Rafic.  The subsequent questions in cross-
examination, combined with counsel's closing argument, suggest
counsel was trying to raise the implication that it was unusual for a
statement taken at a jail not to be recorded in some fashion.
Consistent with that challenge to [petitioner's] unrecorded
statement to Defective Rafic, defense counsel reminded the jury
that oral statements by the [petitioner] had to be considered with
caution if they were not written or recorded, noted that in his
experience statements taken by police officers are recorded, and
described some of the challenges in relying on one person's
interpretation of another's oral statements.  Thus, it appears from
this record there could have been legitimate tactical reasons for
counsel eliciting the testimony that [petitioner] was interviewed
while in jail.

Similarly, in looking at the entire record, it appears defense
counsel had a tactical reason for eliciting the testimony that
Detective Rafic was familiar with [petitioner] as a drug user.  In
closing argument, counsel questioned [petitioner's] coherence in
making his statement.  [Defense counse] attempted to argue that
[petitioner] was "spaced out" [fn] when [petitioner] made his
statement, and that [petitioner] referenced insanity and "5150" (see
fn. 5, ante) which counsel characterized as "the typical course for
anybody that's done any business with drug use."

[fn]  The particular characterization of [petitioner] as "spaced
out" was objected to and that objection was sustained.
Nonetheless, it gives insight into counsel's reasoning in
eliciting that testimony.

Third, with respect to counsel's misspeaking in closing argument
that the jury should convict [petitioner] of petty theft with a prior
rather than robbery, certainly this was an error on counsel's part.
However, we cannot say the error was prejudicial.  Improper
statements to the jury are prejudicial when "'there is a reasonable
likelihood that the jury construed or applied any of the complained-
of remarks in an objectionable fashion.'"  (People v. Cunningham
(2001) 25 Cal.4th 926, 1001; see also People v. Osband (1996) 13

17

1     Cal.4th 622, 696-697.)  We see no such reasonable likelihood here.

2          Counsel's strategy at trial was not to claim his client's innocence, a claim which would likely have undercut his
3     credibility with the jury given the evidence against [petitioner], which included surveillance videos, eyewitness identifications and
4     a statement to police. [fn]  Rather, [defense counsel's] strategy was to argue [petitioner] was not guilty of robbery but a lesser included
5     offense, such as attempted petty theft.  [Defense counsel] argued this point throughout both of his closing arguments.  "It is clear
6     from the record that counsel's reference to "petty theft with *a prior*" (italics added) was a "slip of the tongue," a slip which he
7     immediately corrected by stating, "Excuse me.  He was guilty of attempted petty theft."  We cannot believe this inadvertent slip of
8     the tongue, which was immediately corrected, so infected the proceedings that but for it the result of the proceeding would have
9     been different.

10          [fn] "It is not ineffective assistance of counsel for counsel to admit obvious weaknesses in the defense case.  [Citation.]
11     [W]here the evidence of guilt is quite strong, it is entirely understandable that trial counsel, given the weight of
12     incriminating evidence, made no sweeping declarations of his client's innocence but instead adopted a more realistic approach,
13     namely, that . . . defendant . . . may have committed [a lesser included offense] . . . .  [Citation.]  [G]ood trial tactics [may]
14     demand[] complete candor' with the jury."  [Citation.]  [Internal quotations omitted.]  (In re Alcox (2006) 137 Cal.App.4th 657, 668.)

15

16          In sum, although another lawyer might have used different tactics, it is not reasonably probable a more favorable verdict
17     would have resulted in the absence of the alleged errors."  (People v. Ferraez (2003) 112 Cal.App.4th 925, 935.) [fn]

18          [Petitioner] argues defense counsel's "errors are underscored, and perhaps explained, by a strange argument defense counsel
19     initiated with [petitioner] -- on the record – at the court trial of the prior allegations."  We disagree with [petitioner's] assertion
20     that the referenced exchange demonstrated a "lack of respect for due process" by defense counsel or that counsel "had difficulty
21     distinguishing between his role as defense counsel and the role of the prosecution."  As explained in this opinion, there were legitimate tactical
22     reasons for counsel's alleged errors.  With respect to the specific exchange [petitioner] complains about, [petitioner] appeared to believe that because
23     he had pleaded to the prior offenses, they were not convictions.  Counsel advised him this was a legal misapprehension.  Counsel then entered an
24     objection on [petitioner's] behalf, based on [petitioner's] belief.  This record does not reveal any lack of respect for due process or confusion
25     from defense counsel about his role or obligations in this case.

26     (LD 3 at 14-18.)

1    A reviewing court is not required to address the two parts of the <u>Strickland</u> test in

2    the order set forth therein.  <u>See Strickland</u>, 466 U.S. at 697.  As the Court stated in <u>Strickland</u>:

3        In particular, a court need not determine whether counsel's
         performance was deficient before examining the prejudice suffered
4        by the defendant as a result of the alleged deficiencies.  The object
         of an ineffectiveness claim is not to grade counsel's performance.
5        If it is easier to dispose of an ineffectiveness claim on the ground
         of lack of sufficient prejudice, which we expect will often be so,
6        that course should be followed.  Courts should strive to ensure that
         ineffectiveness claims not become so burdensome to defense
7        counsel that the entire criminal justice system suffers as a result.

8    <u>Id.</u>

9        The court has reviewed the appellate court's opinion and finds that, in light of the

10   record, the denial of petitioner's claims contained in his third ground for relief was reasonable.

11   The state court described tactical reasons for all of defense counsel's actions, and alleged failures

12   to act, with the exception of defense counsel's inadvertent reference to petitioner's prior, which

13   defense counsel immediately corrected on the record.  Petitioner has failed to demonstrate the

14   state court's decision was unreasonable under <u>Strickland</u>.  <u>Harrington</u>, 131 S. Ct. at 788.

15   Reasonable tactical decisions, including decisions with regard to the presentation of the case, are

16   "virtually unchallengeable." <u>Strickland</u>, 466 U.S. at 690.

17       But even assuming, arguendo, any or all of these subclaims demonstrated defense

18   counsel was ineffective, petitioner has failed to demonstrate prejudice under <u>Strickland</u>.  As

19   noted by respondent, the evidence against petitioner was "overwhelming." (Dkt. No. 13 at 25.)

20   First, the crime was videotaped by surveillance cameras at the gas station.  Officer Dale Eubanks

21   saw the still-frame photographs from the surveillance tape and recognized petitioner as one of the

22   robbers.  (RT at 80-81, 131-33, 138-39.)  Both store clerks identified petitioner as one of the

23   robbers, although Cristina Lopez was not one hundred percent certain.  (RT at 101-03, 106-07

24   (Lopez), 140-43 (Eubanks), 188-89 (Valdez).)  Finally, petitioner confessed to police officer

25   Nick Rafic detailed facts concerning petitioner's involvement in the robbery.  (RT at 144-51.)  In

26   light of this evidence, petitioner cannot demonstrate the outcome of this proceeding would have

1   been different absent the testimony cited by petitioner in the third ground for relief, or absent

2   defense counsel's slip of the tongue in closing argument.

3          Finally, contrary to petitioner's argument, the exchange between petitioner and

4   defense counsel during the court trial on the allegations of petitioner's prior convictions does not

5   reflect defense counsel was ineffective or unduly argumentative.  Rather, the record reflects

6   petitioner believed a plea bargain was not a conviction, and petitioner was frustrated and difficult

7   with defense counsel once petitioner realized his mistake would have serious consequences in

8   terms of a lengthy incarceration under California's Three Strikes Law.  (RT at 329-31.)

9   Petitioner has failed to demonstrate that the denial of this claim was unreasonable under

10  Strickland, 466 U.S. at 668.

11         For all of the above reasons, the state court's rejection of petitioner's third ground

12  for relief, including his four subclaims, was neither contrary to, nor an unreasonable application

13  of, controlling principles of United States Supreme Court precedent.  Therefore, petitioner's third

14  ground for relief should be denied.

15                 B.  Cumulative Error

16         Petitioner's fourth claim is that the cumulative effect of the errors alleged herein

17  constitute a denial of due process.

18         The last reasoned rejection of this claim is the decision of the California Court of

19  Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

20  this claim as follows:

21          [Petitioner's] final contention is that the effect of the errors
            alleged when considered cumulatively produced a trial setting
22          which was fundamentally unfair.  As discussed fully in this
            opinion, we have not found such errors.  The trial court acted
23          within its authority in reopening closing argument; the court did
            not abuse its discretion in allowing the jury to have defense
24          counsel's second closing argument read back; and counsel was not
            ineffective.  In fact, the only error claimed, which we agree was
25          error, was counsel's slip of the tongue near the end of his first
            closing argument.  However, the "jury had heard the entire case –
26          the evidence, the argument, and the instructions. . . .  If a slip of the

                                            20

1  tongue of this character influenced the jurors and caused them to
   find [petitioner] guilty rather than not guilty, our whole jury system
2  must fail as this would be tantamount to a holding on our part that
   the average juror lacks the necessary intelligence and common
3  sense to act as a trier of fact."  (People v. Sparks (1967) 257
   Cal.App.2d 306, 309.)  We will not so find.
4

5  (LD 3 at 19.)

6          The Ninth Circuit has concluded that under clearly established United States

7  Supreme Court precedent the combined effect of multiple trial errors may give rise to a due

8  process violation if it renders a trial fundamentally unfair, even where each error considered

9  individually would not require reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007)

10 (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974), and Chambers v. Mississippi, 410

11 U.S. 284, 290 (1973)).  "The fundamental question in determining whether the combined effect

12 of trial errors violated a defendant's due process rights is whether the errors rendered the criminal

13 defense 'far less persuasive,' Chambers, 410 U.S. at 294, and thereby had a 'substantial and

14 injurious effect or influence' on the jury's verdict."  Parle, 505 F.3d at 927 (quoting Brecht v.

15 Abrahamson, 507 U.S. 619, 637 (1993)); see also Hein v. Sullivan, 601 F.3d 897, 916 (9th Cir.

16 2010) (same).

17         This court has addressed each of petitioner's claims and has concluded that no

18 error of constitutional magnitude occurred.  While defense counsel's reference to "petty theft

19 with a prior," was error, it was an inadvertent error which defense counsel immediately corrected.

20 This court also concludes that the alleged errors, even when considered together, did not render

21 petitioner's defense "far less persuasive," nor did they have a "substantial and injurious effect or

22 influence on the jury's verdict."  Accordingly, petitioner is not entitled to relief on his claim of

23 cumulative error.

24 VI.  Conclusion

25         For all of the above reasons, the undersigned denies petitioner's application for a

26 writ of habeas corpus.

21

1    Before petitioner can appeal this decision, a certificate of appealability must issue.

2    28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A certificate of appealability may issue under 28

3    U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

4    constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of

5    appealability indicating which issues satisfy the required showing or must state the reasons why

6    such a certificate should not issue.  Fed. R. App. P. 22(b).

7    For the reasons set forth above, the undersigned finds that petitioner has not made

8    a showing of a substantial showing of the denial of a constitutional right.

9    Accordingly, IT IS HEREBY ORDERED that:

10    1.  Petitioner's application for a petition for writ of habeas corpus is denied; and

11    2.  The court declines to issue the certificate of appealability referenced in 28

12    U.S.C. § 2253.

13    DATED:  March 14, 2011

14    _____

15    KENDALL J. NEWMAN
      UNITED STATES MAGISTRATE JUDGE

16    youn2832.157

22